[Civ. No. 14169.   Second Dist., Div. Three.   Apr. 27, 1944.]

Estate of MARIE JENSEN WILSON, Deceased. OSCAR JENSEN et al., Appellants, v. ANDREW WILSON, as Administrator, etc., Respondent.

M. F. Buffum and Montgomery G. Rice for Appellants.

Bert G. Wetherby for Respondent.

DESMOND, P. J.—This is an appeal by Oscar Jensen and Gudmund Jensen, brothers of the late Marie Jensen Wilson, from orders in probate, overruling their objections to the petition of Andrew Wilson for distribution to himself as sole distributee, without rendering an account as administrator, of the estate of his wife, Marie Jensen Wilson; also determining that Andrew Wilson was the sole heir of Marie Jensen Wilson and ordering distribution of the property of their deceased sister to the legal representative of Andrew Wilson, who died while these proceedings were pending.

At the hearing on December 29, 1942, before a probate commissioner, who, as judge pro tempore, passed upon the matters submitted, no oral testimony was introduced, the parties stipulating that the deposition of Andrew Wilson, which had been taken on the 3d day of December, 1942, might be introduced in evidence. It was further stipulated as follows: "That the decedent Marie Jensen Wilson was married to Andrew Wilson aforesaid in 1925 and died in Los Angeles County, California, intestate and without issue her surviving, on February 11, 1942, and that said Andrew Wilson her husband survived her and is now the duly appointed, qualified, and acting administrator of her estate. That both the parents of the decedent were dead at the time of the death of the decedent leaving as their sole issue in addition to the decedent, their sons and brothers of the decedent, Oscar Jensen and Gudmund Jensen sometimes otherwise called Goodman Jensen, said sons being the objectors herein. . . . in 1923 John E. Lewis and Marie N. Lewis entered into a contract with Marie E. Jensen who was then unmarried, to sell to her the real property which is a part of this estate the legal description of which is: Lot 12 in Block 10 of Vista Del Oro Tract. . . . That at the time of the making of said contract the said Andrew Wilson was a married man. That on May 18, 1927, the said John E. Lewis and Marie N. Lewis executed and delivered their grant deed to said property to 'Marie Jensen Wilson, a married woman formerly Marie E. Jensen' the decedent herein. . . . That on or about May 18, 1927, the said Marie Jensen Wilson decedent herein made, executed

and delivered her grant deed conveying the said real property to one Ruth Sumner who at the same time and as part of the same transaction made, executed and delivered her grant deed conveying said real property to the said Andrew Wilson and Marie Jensen Wilson decedent herein as joint tenants. . . . That on February 2, 1934, the said Andrew Wilson made, executed and delivered his Deed of Gift conveying said property to Marie Jensen Wilson his wife, the decedent herein, . . . that, on the hearing, with the consent of the court, the case shall be submitted on said evidence and such argument of counsel as the court shall desire and permit.''

From Mr. Wilson's deposition, it appeared that in 1923, Marie Jensen, being then a single woman, entered into an installment contract to purchase the real estate hereinbefore mentioned. The deponent testified that he gave her the sum of $500 from his own funds to make the down payment on the contract, and further that she made the succeeding monthly payments ''always after that'' from money which he gave her from his salary. The testimony in regard to his transfer of interest on February 2, 1934, to his wife, formerly Marie Jensen, whom he had married in 1925, was as follows:

''Q. Now, was there any discussion between you and your wife concerning that property, that is, the nature of the transaction as to whether it was a gift, or the nature of the property, or anything of the sort? . . . A. No, there wasn't any gift. It was a case of community property. We figured it was going to be community property all the way through. Q. Was that so stated by you? A. Yes. . . . MR. WETHERBY: Q. Did you intend to make a gift to her? A. No. Q. Now, were all the payments that were made on this property, as well as the payments made on the car, made with funds which you furnished her? A. Yes, those were the only funds there were. Q. Now, going back a bit, you have stated that it was your intention to become married to Marie Jensen Wilson as soon as you were divorced from your then wife, and was there any understanding or agreement with Marie Jensen Wilson relative to the ownership of this property when it was first purchased in 1923? . . . A. It was to be our home place. Q. Then there was discussion wasn't there? A. That is what we were buying it for, was for a home. I don't just get that. Q. Why was the property placed in your wife's name when it was first purchased? A. Well, the only reason

was if anything should happen to me there would be no trouble about who would get it. Q. And when you executed the deed covering a part of the property in 1934, was that for the same purpose? A. Yes, I didn't want anybody else to have it, because I had nobody. My sister died, and she had nobody, and it was a case of just the two of us, and I wanted her to get it if anything happened to me, the same that she wanted me to get it if anything happened to her. Q. But you didn't intend to make a gift to her, is that correct? A. No, no gift. It was freely and entirely community property. Whoever it was left, it was supposed to be their property. Q. And that was the understanding? A. All the way through. Q. That was true not only of the real property, but of the car, or anything else that you owned? A. Well, everything we owned. I bought a lot of the property in the house on my own. All the property was to go to the one or the other.''

The trial court concluded that the real property which had been the subject matter of so many deeds was, at the time of Mrs. Wilson's death, the community property of the Wilsons, and the first, and most important, question on this appeal is to determine whether or not such a conclusion is legally possible under the evidence. Appellants point to the several deeds and insist that between the years 1927 and 1934 the Wilsons held title as joint tenants, a title inconsistent with a community interest, and that in any event from the date of the deed of gift to her death Mrs. Wilson owned the land as her separate property. If the conclusion of the trial court had to be based upon the deeds alone, that is, if the nature of the Wilsons' interest in the property which was their home was determined entirely by the written instruments, appellants' contention would have a sound basis. But, as between Mr. and Mrs. Wilson and those claiming through them, the character of their interest in the property is not necessarily that which would follow from the form of the deeds. It is now too well settled to justify more than the citation of the authorities that in spite of the mold into which a deed would seemingly press a title, either because of the intent with which the deed was made (*Horsman* v. *Maden* (1941), 48 Cal.App.2d 635, 640 [120 P.2d 92]), or made and received (*Williamson* v. *Kinney* (1942), 52 Cal. App.2d 98, 102 [125 P.2d 920]), or because of an oral agreement between a husband and wife, carried into effect, deter-

mining their respective interests in real estate (*Kenney* v. *Kenney* (1934), 220 Cal. 134, 136 [30 P.2d 398]; *Schipper* v. *Penkalski* (1941), 46 Cal.App.2d 28, 32 [115 P.2d 231]; *Marvin* v. *Marvin* (1941), 46 Cal.App.2d 551, 556, 557 [116 P.2d 151]; *Estate of Sehabiague* (1941), 47 Cal.App.2d 793, 799 [119 P.2d 30]; and see *Estate of Watkins* (1940), 16 Cal.2d 793, 797 [108 P.2d 417, 109 P.2d 1], and cases cited) property which, measured by the deed, would not be community property, nevertheless may be just that. The Supreme Court has recently enunciated the same principle (*Tomaier* v. *Tomaier* (1944), 23 Cal.2d 754 [146 P.2d 905]).

A reading of the cases and the additional authorities they cite makes plain that the trial court had ample justification for concluding that at the death of Marie Jensen Wilson the property in question was the community property of herself and Andrew Wilson.

Appellants contend, further, that even if it should be determined that the property was properly found to be community property, the decree of distribution was in error in not awarding one-half of it to them. This phase of their case is based upon the provisions of section 228 of the Probate Code, reading: "If the decedent leaves neither spouse nor issue, and the estate, or any portion thereof was community property of the decedent and a previously deceased spouse, and belonged or went to the decedent by virtue of its community character on the death of such spouse . . . such property goes in equal shares to the children of the deceased spouse and their descendants by right of representation, and if none, then one-half of such community property goes to the parents of the decedent in equal shares, or if either is dead to the survivor, or if both are dead in equal shares to the brothers and sisters of the decedent and their descendants by right of representation, and the other half goes to the parents of the deceased spouse in equal shares, or if either is dead to the survivor, or if both are dead, in equal shares to the brothers and sisters of said deceased spouse and to their descendants by right of representation."

Appellants' argument is disposed of by the fact that the order of distribution appealed from was made in the proceedings to administer Mrs. Wilson's estate. She did not die leaving "neither spouse nor issue." If appellants are entitled to any interest in the property in question it is because it

belonged to Mr. Wilson and his previously deceased spouse as community property at the time of her death, and the matter of its distribution to appellants will be a question to be passed upon in the administration of Mr. Wilson's estate. He may have disposed of it by will, in which case section 228, Probate Code, will not be applicable. (*Estate of Taitmeyer* (1943), 60 Cal.App.2d 699, 710 [141 P.2d 504, 511].) Be that as it may, it was not error, in the proceedings under review, to refrain from making a distribution of Mr. Wilson's property.

The various orders appealed from are affirmed.

Wood (Parker), J., and Bishop, J. pro tem., concurred.