[L. A. No. 20832. In Bank. Nov. 13, 1950.]

OLIVIA SOCOL, as Administratrix, etc., Appellant, v. LOUIS KING, Respondent.

Porter C. Blackburn and Shelby Lee Chambers for Appellant.

Chas. T. Rippy for Respondent.

CARTER, J.—Plaintiff, as administratrix with the will annexed of the estate of her mother, Paraschiva Socol King, deceased, brought this action against decedent's husband, Louis King, to quiet title to a one-half interest in certain real and personal property located in California. After judgment was entered in favor of defendant, plaintiff moved to set it aside and to enter a different judgment on the ground that the conclusions of law were erroneous and not consistent with the findings of fact (Code Civ. Proc., § 663(1)). The motion was denied and plaintiff appealed from the judgment

and from the order of denial. We granted defendant's motion to dismiss the appeal from the judgment on the ground that notice of appeal had not been timely, but the motion to dismiss the appeal from the order denying plaintiff's motion to vacate the judgment was denied. (*Socol* v. *King*, 34 Cal. 2d 292 [209 P.2d 577].)

The trial court found that decedent, a widow with three minor children, was married to defendant in 1927. At that time she owned certain business properties, known as 3702 Block Avenue and 1615 Columbus Drive, in East Chicago, Indiana. In 1931, after her marriage to Louis King, the depression affected decedent and she was forced to sell 3702 Block Avenue. Other property, located at 3740 Block Avenue, was purchased on a contract made in the joint names of the deceased and defendant. Thereafter, they jointly operated a store on this property, the earnings from which, together with the income from decedent's Columbus Drive property, were used for the support of the family and for payments on the purchase price of the Block Avenue property. The title to the latter property stood in the joint names of the parties.

The court also found that decedent made a trip to California in 1937 at which time she arranged to buy certain real and personal property in this state. The funds for these purchases "came partly from the sale of the joint property owned by the parties in (East Chicago) Indiana and partly from the separate property owned by the decedent at 1615 Columbus Drive in said city."

Other findings were that "at the time of the purchase of the real and personal property in California by the decedent in the joint names of herself and defendant (as joint tenants), she believed that one-half of the property belonged to her and one-half belonged to the defendant, and that her one-half would go, share and share alike, to her children upon her death; but there is no evidence of any understanding between the parties at the time of the purchase of the California property that it would actually be treated as community property, the defendant not being present in California at that time, the sole directions as to the kind of deed to be obtained on the purchase of the real property and the kind of contract to be given for the purchase of the personal property was given by the decedent during the absence of defendant; neither is there any evidence of any agreement between the parties subsequent to the purchase of the California property that it was considered by them as community property."

It appears that the ultimate objective of decedent was to acquire property in her own right which she could leave to her children upon her death. She made a will to carry out this purpose. There was a mistaken opinion of the law in the mind of the deceased as to the legal effect of the conveyances of the California property to herself and defendant in joint tenancy. Defendant has sold the personal property for the sum of $20,000.

The court concluded that the realty was not community property; that the decedent's mistaken opinion of the law did not affect the rights of defendant as surviving joint tenant; that the acts and conduct of the parties with reference to the purchase of the California property does not constitute any understanding between them that such property would be considered community property; and that plaintiff is not entitled to any part of the real property nor to the sum of $20,000. The judgment decreed that defendant is the owner of all the California property and its proceeds.

Plaintiff contends that the conclusions of the trial court are erroneous and not consistent with its findings on probative facts as to the source of the funds used to purchase the California property and the intent and belief of decedent. She contends that the findings establish her right to a judgment under either or both of two theories, namely, on the ground that decedent's intent controls over the form of the deed, and that a resulting trust arose in favor of decedent to the extent that she did not intend to make a gift of her separate property to defendant.

As to the first theory, it is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties. (*La Mar* v. *La Mar*, 30 Cal.2d 898 [186 P.2d 678]; *Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708], and cases there cited; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]; *Perdicalis* v. *Perdicalis*, 92 Cal.App.2d 274 [206 P.2d 650]; *Bassi* v. *Bassi*, 89 Cal.App. 2d 886 [202 P.2d 96]; *Rogers* v. *Rogers*, 86 Cal.App.2d 817 [195 P.2d 890]; *Tompkins* v. *Tompkins*, 83 Cal.App.2d 71 [187 P.2d 840]; *Wood* v. *Wood*, 81 Cal.App.2d 727 [185 P.2d 53].)

It is clear, however, that this case does not fall within these

decisions. The findings establish that decedent believed that she had a one-half interest in the property in question which would descend to her children, but that there was no understanding between the parties that they held it other than as joint tenants. These findings amply support the conclusion that all of the California property belongs to defendant as surviving joint tenant. ■ When there is an oral or written agreement as to the ownership of the property (*La Mar v. La Mar, supra*; *Sears v. Rule,* 27 Cal.2d 131 [163 P.2d 443]; *Estate of Watkins,* 16 Cal.2d 793, 795 [108 P.2d 417, 109 P.2d 1]; *Kenney v. Kenney,* 220 Cal. 134 [30 P.2d 398]; *Rogers v. Rogers, supra*; *Tompkins v. Tompkins, supra*; *Wood v. Wood, supra*; *Cummins v. Cummins,* 7 Cal.App.2d 294 [46 P.2d 284]), or where such an understanding may be inferred from the conduct and declarations of the spouses (*Huber v. Huber, supra*; *Tomaier v. Tomaier, supra*; *Trimble v. Trimble,* 219 Cal. 340 [26 P.2d 477]; *Hibernia Sav. & Loan Soc. v. De Ryana,* 210 Cal. 532 [292 P. 632]; *Salveter v. Salveter,* 206 Cal. 657 [275 P. 801]; *Estate of Kelpsch,* 203 Cal. 613 [265 P. 214]; *Hammond v. McCollough,* 159 Cal. 639 [115 P. 216]; *Fanning v. Green,* 156 Cal. 279 [104 P. 308]; *Title Insurance & Tr. Co. v. Ingersoll,* 153 Cal. 1 [94 P. 94]; *Perdicalis v. Perdicalis, supra*; *Bassi v. Bassi, supra*; *Luminoso v. Luminoso,* 75 Cal.App.2d 472 [171 P.2d 516]; *Estate of Wilson,* 64 Cal.App.2d 123 [148 P.2d 390]; *Horsman v. Maden,* 48 Cal.App.2d 635 [120 P.2d 92]), it is true that the terms of the deed are not controlling. But where such circumstances do not exist, a true joint tenancy is created by a conveyance to husband and wife in that form, although the property is purchased with community funds (*In re Kessler,* 217 Cal. 32 [17 P.2d 117]; *Siberell v. Siberell,* 214 Cal. 767 [7 P.2d 1003]; *Delanoy v. Delanoy,* 216 Cal. 23 [13 P.2d 513]; *In re Rauer's Collection Co.,* 87 Cal.App.2d 248 [196 P.2d 803]), or with the separate funds of the husband (*Cox v. Cox,* 82 Cal.App.2d 867 [187 P.2d 23]; *Chamberlain v. Chamberlain,* 2 Cal.App.2d 684 [38 P.2d 790]). ■ When property is purchased with community funds and title is taken in joint tenancy at the request of the wife, the secret intention of the wife that the property shall remain a part of the community is not effective. "She cannot defeat her act by testimony of a hidden intention not disclosed to the other party at the time of the execution of the document." (*Watson v. Peyton,* 10 Cal.2d 156 [73 P.2d 906].) The same rule should be applied where joint funds are used to buy the property. ■ It

follows that the trial court properly held that decedent's secret belief as to the legal result of procuring title to the California property in joint tenancy could not affect its actual status.

Plaintiff's principal attack on the judgment is based on the theory that the findings establish a resulting trust for the benefit of decedent in the survivorship rights to one-half of the property in question. She contends that the findings as to the source of the funds used to purchase the property indicate that the contributions made by decedent ''greatly preponderated over any made by respondent,'' that, therefore, the conveyances to decedent and defendant as joint tenants gave rise to a resulting trust presumption, and that defendant had the burden of rebutting the presumption by affirmative evidence of the intent of decedent to make a gift to him. Plaintiff argues that defendant has not controverted the presumption by evidence that decedent's lack of donative intent was not disclosed to him.

The findings do not bear out plaintiff's claims. The funds used to purchase the California property came partly from the sale of the joint property in Indiana. As to these sums no resulting trust problem arises. ''The proceeds from joint tenancy property, in the absence of a contrary agreement, retain the character of the property from which they are acquired.'' (*Fish* v. *Security-First Nat. Bank,* 31 Cal.2d 378, 387 [189 P.2d 10] ; *In re Kessler, supra.*) There can be no question here that there was a joint tenancy in both the real and personal property, as joint funds were used to pay the purchase price of both properties and title was acquired by decedent and defendant by instruments transferring title to them as joint tenants. As indicated above, decedent's undisclosed belief as to the legal effect of the conveyances is immaterial.

Plaintiff's position is that decedent contributed most of the purchase price for the 3740 Block Avenue property, so that it was not in fact jointly owned. However, the findings do not disclose anything other than the facts that this parcel was purchased on a contract made in the joint names of the parties, that title stood in their joint names, and that it was the ''joint property owned by the parties in Indiana.'' The fact that some of the payments were subsequently made from decedent's separate property cannot alter the situation since it was not found that her contributions exceeded those of defendant or that they were made before or at the time the parties

acquired title. (*Cf.*, *Dimity* v. *Dixon*, 74 Cal.App. 714, 722 [241 P. 905]; *Lincoln* v. *Chamberlain*, 61 Cal.App. 399, 401 [214 P. 1013].) Neither does it appear that defendant made a loan of credit to decedent, as was the case in *Viner* v. *Untrecht*, 26 Cal.2d 261 [158 P.2d 3].

▌ The finding that funds for the California purchases came ''partly from the separate property owned by decedent'' is not inconsistent with the conclusion that defendant is the sole owner of the California property. It is true that the presumption of a resulting trust (Civ. Code, § 853) arises where title to property is taken in the name of the husband and the consideration for the transfer is furnished by the wife (*Shaw* v. *Bernal*, 163 Cal. 262 [124 P. 1012]; *Zeller* v. *Knapp*, 135 Cal.App. 122 [26 P.2d 704]; *Rhea* v. *Thomson*, 115 Cal.App. 466 [1 P.2d 1091]; *Harris* v. *Hensley*, 83 Cal. App. 283 [256 P. 832]), and that ''a resulting trust may be established in a fractional interest in property where the one urging the trust pays only a portion of the purchase price'' (*Watson* v. *Poore*, 18 Cal.2d 302, 317 [115 P.2d 478]; *Breitenbucher* v. *Oppenheim*, 160 Cal. 98 [116 P. 55]; *Gerstner* v. *Scheuer*, 91 Cal.App.2d 123 [204 P.2d 937]; *Neusted* v. *Skernswell*, 69 Cal.App.2d 361 [159 P.2d 49]; *Padilla* v. *Padilla*, 38 Cal.App.2d 319 [100 P.2d 1093]). ▌ It is also true that the existence of a resulting trust will be presumed, to the extent that a gift was not intended, in favor of one who has paid the entire purchase price of property which is conveyed to the trust claimant and another as joint tenants; that is, the second party holds the title to a joint interest in trust for the claimant. (*Rowland* v. *Clark*, 91 Cal. App.2d 880 [206 P.2d 59].) ▌ But the burden of proving the elements necessary to establish a resulting trust rests on the party asserting it, and one who relies on a *pro tanto* trust must establish definitely the proportional amount of the purchase price contributed. In the absence of such proof, a resulting trust will not be declared. (*Moulton* v. *Moulton*, 182 Cal. 185 [187 P. 421]; *Los Angeles etc. Co.* v. *Occidental Oil Co.*, 144 Cal. 528 [78 P. 25]; *Plass* v. *Plass*, 122 Cal. 3 [54 P. 372]; *Woodside* v. *Hewel*, 109 Cal. 481 [42 P. 152]; *McQuin* v. *Rice*, 88 Cal.App.2d 914 [199 P.2d 742].) The value of the contributions made by the trust claimant must be determined by the trier of fact where conflicting evidence is introduced on that question. (*Moultrie* v. *Wright*, 154 Cal. 520 [98 P. 257].) In this case there is no finding as to the amount paid by decedent from her separate property nor is

there a finding as to the total purchase price of the property involved. Presumably, plaintiff failed to establish these facts. In any event, the findings do not support her claim that a trust resulted for the benefit of decedent.

Since the conclusions of law are correct and not inconsistent with the findings, the trial court properly denied plaintiff's motion to vacate the judgment.

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied December 11, 1950.