[Civ. No. 4756.   Fourth Dist.   Jan. 18, 1954.]

JANET W. PERKINS, as Administratrix, etc., et al., Respondents, v. CAROLINE R. WEST, Appellant.

Morgan W. Lowery and Charles R. Stead for Appellant.

Adolph B. Rosenfield for Respondents.

MUSSELL, J.—Caroline R. West, the surviving spouse of J. Howard D. West, deceased, appeals from a judgment in which it was decreed that certain real and personal property standing of record in the names of appellant and her predeceased husband as joint tenants, was nevertheless the community property of appellant and said J. Howard D. West. West, hereinafter referred to as decedent, purchased the real property involved in April, 1942, and took title in his own name. The total price of the property was $6,500, $2,500 being paid in cash, of which appellant paid $500 and the balance being secured by a promissory note and trust deed signed by decedent and appellant. Decedent and appellant were married on May 29, 1943, and the $4,000 note and trust deed, which had been given as part of the purchase price of the property, was paid off, and a reconveyance was executed on January 10, 1944. On January 14, 1944, decedent and appellant joined in executing a deed to said real property (which was known as the Carbon Canyon property) whereby it was conveyed to decedent and appellant as joint tenants. Bank accounts were opened by decedent and appellant and both signed the bank's joint account forms without any discussion between them as to whether the funds would be considered as community property . . . "just a routine matter." Beginning in October, 1946, decedent caused various stock certificates, some theretofore standing in his own name, to be issued or reissued in his name and that of appellant as joint tenants, each being pursuant to written instructions from the decedent.

On July 16, 1949, decedent made his will in which he stated that all of his property was community property with his wife, with the exception of a Hudson car which he directed

his executor to sign over to his daughter. He directed his executor to make certain payments from his interest in the community property to his first wife, Amy L. West, one of the plaintiffs herein, to his daughters and to appellant. The will was dictated by decedent to G. R. Case, a certified accountant, who was called to decedent's home at his request. At the time decedent was suffering considerably with a severe heart attack and was in bed. Case testified that when he came into decedent's bedroom, decedent suggested that appellant leave the room so that he could dictate the will; that she did leave the room, and after decedent dictated the first part of the will, he had "another attack" and called out or made some noise which resulted in appellant's coming back into the room; that decedent did not make any statement to the effect that his property was community property during any time that appellant was in the room; and that appellant was in and out of the room during the remainder of the dictation; that after decedent had completed dictating the will, he, Case, went away, prepared the will and returned with it shortly thereafter; that decedent then read the will and signed it; that it was also signed by witnesses and delivered to the witness and left in his possession; that appellant did not see the will prior to the death of the decedent. In this connection appellant testified that at the time she did not see the will and could not say what was in it; that she heard the deceased talking and did not "pay too much attention"; that decedent did what he wanted to and she did not interfere; that she could not say whether she was in the room when decedent actually started talking; that she and the decedent did not agree at any time that any or all of the property of the decedent which he had acquired before his marriage to her or thereafter should become community property.

On May 25, 1950, after the death of decedent, which occurred on April 26, 1950, appellant filed a petition in the superior court to terminate the joint tenancy in the Carbon Canyon property, the stocks, bank accounts and a certain mortgage and trust deed, with the exception of the business and property referred to as the Canyon Food Products in which decedent did not own any interest at the time of his death. In the course of these proceedings appellant executed an inheritance tax affidavit in which it is stated that the "property transferred was all community." The attorney who represented appellant and prepared the affidavit testified that he handed her the affidavit; that "she looked it over,

read it over and said, 'It says here that it is community property. I thought it was joint tenancy,' or 'I told you it was joint tenancy,' or some words to that effect, whereupon I said, 'Well, yes, it is joint tenancy property, but this is just for the purposes of inheritance tax, and the question relates to the source of the property,' or some general words to that effect. I can't, of course, remember the exact words at this stage.''

In connection with this affidavit, appellant's attorney wrote a letter to the inheritance tax attorney in Los Angeles in which he stated, among other matters, that it was his understanding that ''Mr. and Mrs. West at all times understood, agreed and intended that none of his property would be separate property but that it would all be the community property of himself and his surviving wife notwithstanding the fact that title to the property was in joint tenancy.'' The writer of the letter testified that the contents thereof were not discussed with appellant prior to the time it was written and that appellant did not authorize him to make any statements contained therein with respect to the nature of her property.

The will, the inheritance tax affidavit, and the letter written by appellant's attorney were all admitted in evidence over the objection of appellant's counsel. Appellant contends that these documents were inadmissible and that the evidence is not sufficient to support a finding and judgment that the property which stood of record in joint tenancy at the date of the death of decedent is nevertheless community property.

█ It is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties. (*Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212 [259 P.2d 656]; *Socol* v. *King*, 36 Cal.2d 342, 345 [223 P.2d 627].) █ The declaration in a deed or other instrument that spouses are to take as joint tenants raises the presumption that the legal title is in the parties in accordance with such language and destroys the statutory presumption that the property is community. (*Estate of Jameson*, 93 Cal.App.2d 35, 41 [208 P.2d 54].) █ In *Cash* v. *Cash*, 110 Cal.App.2d 534, 538 [243 P.2d 115], it is held that the opening of a joint tenancy bank account by husband and wife

creates a rebuttable presumption that the money therein is joint tenancy property; that either may rebut this presumption, but in the absence of rebutting testimony the presumption must prevail. And in *DeBoer* v. *DeBoer,* 111 Cal. App.2d 500, 505 [244 P.2d 953], it is said that "A determination by a trial court that the presumption has been rebutted is conclusive on a reviewing court unless it is manifestly without support in the evidence. (*Estate of Baer,* 81 Cal. App.2d 830, 833 [185 P.2d 412].)"

In *Edwards* v. *Deitrich,* 118 Cal.App.2d 254, 260 [257 P.2d 750], it is held that the statutory presumption that property acquired after marriage except by gift, will, devise, or descent is community is rebutted by evidence that the property was taken in joint tenancy; that that form of conveyance not only rebuts the community property presumption, but itself raises the rebuttable presumption that the property is as described in the deed, and places the burden on the party claiming the property to be community to prove that fact (citing cases) ; that by oral agreement a husband and wife can convert community property into separate, and vice versa, and that evidence of such agreement will rebut the presumption created by the form of the deed (citing cases) ; that in order that property may be converted from one form to another there must be relevant evidence of an agreement to that effect; and that the mere fact one of the parties has a mistaken belief about the nature of the property, or has an intent uncommunicated to the other spouse about converting the property from one form to another, or expresses such an intent by will, will not rebut the presumption raised by the form of the deed. (Citing *Socol* v. *King, supra; Cash* v. *Cash, supra;* and *Watson* v. *Peyton,* 10 Cal.2d 156 [73 P.2d 906].)

In the instant case the record shows without question that the title to the property involved was placed by the parties in joint tenancy. The question is whether there was substantial evidence showing that there was an agreement or understanding between the decedent and appellant that the property so placed in joint tenancy should be held as community. We are of the opinion that this question requires a negative answer.

Decedent's statement in the will that all of his property was community indicates a mistaken belief about the nature of the property or an intent to convert it to community and is not sufficient to rebut the presumption raised by the

form of the deed and conveyances. (*Edwards* v. *Deitrich, supra,* 261; *Potter* v. *Smith,* 48 Cal.App. 162, 169 [191 P. 1023].) In this connection it may be noted that there was evidence that the decedent requested appellant to leave the room while the will was being dictated. From this it may be inferred that he did not want appellant to hear his statements as to the character of the property.

It is argued that appellant was present when the will was dictated and heard the statements made by decedent; that she made no objection and acquiesced therein. There was evidence to the effect that appellant was not present when the statements were made and that she did not see the will or pay "too much attention" to what was said. If we assume that appellant did hear the statements of decedent, the facts shown do not indicate that she was bound to deny or admit them or that the statements called for a denial on her part. Under such circumstances she was not affected by the statements or declarations. (*Henshall* v. *Coburn,* 177 Cal. 50, 53 [169 P. 1014].)

The inheritance tax affidavit, containing a statement as to the community character of the property involved, was prepared by the attorney for appellant and intended by him for use by the inheritance tax department. Appellant read the document and expressed her opinion that the property was "joint tenancy" and upon being informed that it was "just for the purpose of inheritance tax and that the question related to the source of the property," affixed her signature thereto. These circumstances do not show an agreement on the part of decedent and appellant that the property was to be considered as community. On the contrary, they indicate that appellant considered the property as in joint tenancy. It may here be noted that the objection to the admissibility of the affidavit on the ground that it was a privileged communication between the attorney and client was apparently waived as appellant's attorney voluntarily produced a copy of the affidavit and exhibited it to plaintiffs' attorney for his inspection and perusal.

The letter written by appellant's attorney to the inheritance tax department in connection with the inheritance tax affidavit was inadmissible. It was not shown to appellant, or written with her consent and only expresses the opinion of the attorney. It does not purport to be a recital of facts related to the attorney by appellant and does not contain a recital of facts upon which such opinion was based.

Considering the entire record in the light of the rules announced in the cases cited herein, we conclude that there is no substantial evidence showing an agreement or understanding that decedent and appellant held the property as community.

The appeal herein is from a part of the judgment only and the notice of appeal excepts therefrom the provisions thereof relating to the bank accounts which were placed in the names of decedent and appellant as joint tenants, and appellant is not seeking a reversal of the provisions of the judgment relating to the claims against the estate, the provisions relating to the third and fourth causes of action set forth in the complaint, or costs.

The judgment is reversed insofar as it requires the appellant to deliver to the plaintiffs, to be administered according to law, all or any of the property of record in the names of decedent and appellant as joint tenants except the bank accounts. Otherwise it is affirmed. Appellant to recover costs.

Barnard, P. J., and Griffin, J., concurred.